IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIA ADAMS, | : | CIVIL ACTION |
| *Plaintiff,* | : | |
| | : | |
| v. | : | |
| | : | |
| THE GLEN AT SHAWMONT STATION, et al., | : | No. 25-cv-4231 |
| | : | |
| *Defendants.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                           **October 15, 2025**

The Court writes for the benefit of the Parties and assumes familiarity with the facts of the case. After Defendant Hazlet Shawmont Holdings, LLC removed this case to federal court, Plaintiff moved to remand (ECF No. 13). For the reasons set forth below, Plaintiff's Motion (ECF No. 13) will be **DENIED**.

**I.   BACKGROUND**

The following factual allegations are drawn from the Complaint. Plaintiff is a Pennsylvania citizen who was residing at the apartment complex The Glen at Shawmont Station in February 2024. *See* ECF No. 1-4 at 5, 7. On February 15, 2024, while Plaintiff was in her apartment unit, she stepped in a hole caused by cracked and loose flooring, and she fell and sustained injuries. *Id.* at 7.

In connection with the above events, on June 24, 2025, Plaintiff brought this action in the Philadelphia County Court of Common Pleas against Defendants The Glen at Shawmont Station; Aion Management, LLC; CBRE, Inc.; John/Jane Does 1-5; and ABC/123 Corporations 1-5. ECF No. 1-4 at 5–7. Plaintiff asserted negligence claims against each Defendant, alleging that Defendants were responsible for the defective flooring in her apartment unit and failed to repair

the flooring or warn her. *See id.* at 7–15. As relevant here, she asserted that: (1) Defendant The Glen at Shawmont Station was the apartment complex in which she fell, (2) Defendants Aion Management, LLC and CBRE, Inc. "owned and/or managed [that] apartment complex," and (3) John/Jane Does 1-5 and ABC/123 Corporations 1-5 were unidentified actors who contributed to her February 15, 2024 injuries. *Id.* at 5–7.

On July 28, 2025, Hazlet Shawmont Holdings, LLC removed this case to federal court. ECF No. 1 at 1. Hazlet identified itself as the defendant improperly named by Plaintiff as The Glen at Shawmont Station and stated that it had become aware of this suit on June 28, 2025. *Id.* at 1, 3. Defendant Hazlet subsequently disclosed that it was a New Jersey citizen. *See* ECF No. 25 at 1–2; *see also* ECF No. 23 at 1 n.1 (requiring Hazlet to file a corrected disclosure of citizenship).

Following the removal of this case, Plaintiff moved to remand, *see* ECF No. 13 at 1, and Plaintiff's Motion is now before this Court.

## II.     DISCUSSION

Plaintiff moves to remand this case to state court on the ground that this Court lacks diversity jurisdiction, *see* ECF No. 13-1 at 1, which is the only basis for subject matter jurisdiction asserted in this case, *see* ECF No. 1 at 3–4. Plaintiff, Defendant Aion Management, LLC, and Defendant CBRE, Inc., are all alleged to be Pennsylvania citizens, *see* ECF No. 1-4 at 5–6, which would ordinarily destroy diversity of citizenship.[1] *See* 28 U.S.C. § 1332(a)(1). However, Defendant Hazlet argues that Aion Management and CBRE are fraudulently joined and asks this Court to disregard their citizenship.[2]

---

[1] If properly served, Defendants Aion Management and CBRE would also have had to consent to removal. *See* 28 U.S.C. § 1446(b)(2)(A). And, in any case, if these Defendants were properly joined and served, their status as forum defendants would have barred removal of this case. *See* 28 U.S.C. § 1441(b)(2).

[2] Plaintiff also sues John/Jane Does 1–5 and ABC/123 Corporations 1–5. *See* ECF No. 1-4 at 6–7. The citizenship of these unnamed, fictitious defendants is disregarded when a case is removed

2

The doctrine of fraudulent joinder permits the removal of a case to federal court despite the presence of a non-diverse defendant when the non-diverse defendant was joined to defeat subject matter jurisdiction. *See In re Briscoe*, 448 F.3d 201, 216 (3d Cir. 2006). A defendant is fraudulently joined when there is either (1) "no reasonable basis in fact or colorable ground supporting" the claims against that defendant or (2) "no real intention in good faith to prosecute the action." *Avenatti v. Fox News Network LLC*, 41 F.4th 125, 133 (3d Cir. 2022) (quoting *Batoff v. State Farm Ins. Co.*, 977 F.2d 848, 851–52 (3d Cir. 1992)). The removing defendant bears the burden of demonstrating fraudulent joinder. *See In re Briscoe*, 448 F.3d at 217.

Defendant Hazlet argues that Plaintiff lacks colorable claims against Defendants Aion Management and CBRE because any connection between those Defendants and Plaintiff's apartment building ended years before Plaintiff was injured—and indeed, ended before Plaintiff even began residing at the building. *See* ECF No. 18 at 4–7. In support of its argument, Hazlet points to an affidavit from the apartment building's property manager. *See* ECF No. 1-5 at 2–4. Defendant Hazlet also submitted, among other exhibits, a printout of Aion Management's website dated September 4, 2025, which lists the properties managed by Aion and does not include the Glen at Shawmont Station.[3] *See* ECF No. 18-3 at 76–78.

Though the starting point for a fraudulent joinder analysis is the plaintiff's complaint, other circuits have sometimes looked to evidence outside the pleadings to determine if a plaintiff asserts colorable claims against an allegedly fraudulently joined defendant. *See, e.g.*, *Smallwood v. Ill. Cent. R.R. Co.*, 385 F.3d 568, 573 (5th Cir. 2004) (en banc); *Murakami v. E.L. DuPont De Nemours*

---

from state court for the purposes of determining whether diversity of citizenship exists. *See* 28 U.S.C. § 1441(b).

[3] Defendant Hazlet also points to Plaintiff's lease and the property deed for the Glen at Shawmont Station, neither of which mentions Aion Management or CBRE. *See* ECF No. 18-3 at 90–102.

3

*& Co.*, Nos. 98-15994, 98-16019, 1999 WL 701902, at *3 (9th Cir. Sept. 9, 1999), *as amended on denial of reh'g and reh'g en banc* (9th Cir. Dec. 3, 1999); *Nerad v. AstraZeneca Pharms., Inc.*, 203 F. App'x 911, 913 (10th Cir. 2006); *see also Vang v. PNC Mortg., Inc.*, 517 F. App'x 523, 525 (8th Cir. 2013) (per curiam) (citing approvingly the principle that "some courts examine material beyond the complaint's allegations to 'determine if there is any factual support' for the claims against the allegedly fraudulently joined defendant" (citation omitted)). This Circuit has similarly assumed that courts may look to evidence outside the pleadings to ascertain whether the plaintiff's claims are colorable. *See Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 112 (3d Cir. 1990) (assuming, without deciding, that "some piercing is appropriate to decide whether plaintiffs have asserted a 'colorable' ground" against the defendant); *see also In re Briscoe*, 448 F.3d at 219 ("[A] court can look to more than just the pleading allegations to identify indicia of fraudulent joinder.").

In some cases, evidence outside the pleadings may seemingly disprove the complaint's allegations. And in such cases, this Circuit has not decided to what extent courts must credit the complaint when determining if there has been fraudulent joinder. In a related context—motions to dismiss under Federal Rule of Civil Procedure 12(b)(6)—it is of course well settled that courts must accept the complaint's allegations as true. *See Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022). But "the purpose of the fraudulent joinder doctrine is to [determine] whether the district court has subject matter jurisdiction;" fraudulent joinder therefore shares some similarities with "dismissing claims [for lack of subject matter jurisdiction] under Rule 12(b)(1)." *See GranCare, LLC v. Thrower*, 889 F.3d 543, 549 (9th Cir. 2018). And, when a Rule 12(b)(1) challenge attacks the complaint's factual allegations, courts do not assume those allegations to be true. *Davis v. Wells Fargo*, 824 F.3d 333, 346 (3d Cir. 2016). What is more, an underlying principle of the

4

fraudulent joinder doctrine is "that the pleadings are deceptive." *Nerad*, 203 F. App'x at 913.

In line with these principles, other circuits have credited evidence outside the pleadings when assessing fraudulent joinder if that evidence establishes that a plaintiff's complaint has "misstated . . . discrete facts." *Smallwood*, 385 F.3d at 573; *see also Smoot v. Chicago, Rock Island & Pac. R.R. Co.*, 378 F.2d 879, 882 (10th Cir. 1967) ("[U]pon specific allegations of fraudulent joinder the court may pierce the pleadings."). This includes, for example, cases where evidence shows that a defendant-doctor "did not treat the plaintiff," that a defendant-pharmacist "did not fill a prescription for the plaintiff," and "any other fact that easily can be disproved if not true." *Smallwood*, 385 F.3d at 574 n.12. However, if a plaintiff presents conflicting evidence that renders his or her claims even colorable, a finding of fraudulent joinder is improper. *See Walker v. Philip Morris USA, Inc.*, 443 F. App'x 946, 955–56 (6th Cir. 2011) (where plaintiffs and defendants presented conflicting affidavits as to whether the non-diverse defendants assumed responsibility for inspecting a smoke detector, a finding of fraudulent joinder was inappropriate); *see also Boyer*, 913 F.2d at 111 ("A district court must resolve all contested issues of substantive fact in favor of the plaintiff . . . ."). Instead, that plaintiff would be entitled to develop those claims through subsequent stages of litigation. *Walker*, 443 F. App'x at 955–56 (district court's finding that plaintiffs' affidavit "was conclusory" and contradicted by his other statements was inappropriate at the fraudulent joinder stage).

The Third Circuit's decision in *Boyer* aligns with the above approach. *See Boyer*, 913 F.2d at 112. There, the Third Circuit cited two cases to "illustrate[]" the "limited piercing" in which courts may engage during a fraudulent joinder analysis. *Id.* (first citing *Smoot*, 378 F.2d 879); then citing *Lobato v. Pay Less Drug Store, Inc.*, 261 F.2d 406 (10th Cir. 1958)). The Court first pointed to *Smoot v. Chicago, Rock Island and Pacific Railroad Company*, a tort action against a railroad

5

in which the Tenth Circuit held that the railroad's employee had been fraudulently joined. *See* 378 F.2d at 882. There, "undisputed evidence" showed that the employee had ended his employment with the railroad before an allegedly defective signaling system was installed. *Id.* at 881–82. Second, the Third Circuit pointed to *Lobato v. Pay Less Drug Store, Inc. Boyer*, 913 F.2d at 112 (citing *Lobato*, 261 F.2d 406). In that case, the defendants presented "uncontradicted evidence in the [form of] affidavits" that the non-diverse defendants were not involved in assembling and selling a bicycle and thus were fraudulently joined. *Lobato*, 261 F.2d at 409 (noting that "the facts stated in the affidavits were not challenged by counter affidavits or other evidence"). Thus, in both cases, the defendants presented evidence that on its face showed that the plaintiff could not recover against the non-diverse defendant, and the plaintiff presented no conflicting evidence.

Here, Defendant Hazlet presented evidence that Defendants Aion Management and CBRE had no relationship whatsoever to Plaintiff's apartment building during the relevant time period and for years leading up to it. Defendant Hazlet points to a notarized affidavit from Kevin Datesman, who has been the property manager at Plaintiff's apartment building since 2005. *See* ECF No. 1-5 at 2. That affidavit states that Defendant Aion Management has not managed this building "since May 31, 2020, after which time, [its] management contract terminated." *Id.* at 3. The affidavit further states that, to Mr. Datesman's knowledge, Defendant CBRE "is a commercial real estate broker that assisted with the sale of the apartment complex . . . in 2018," "has no additional connection with [the building]," owns no "interest in the [building]," and "has never managed the [building]."[4] *Id.*

Plaintiff presents no conflicting evidence. She cites two articles, both of which are in fact

---

[4] As relevant here, according to Plaintiff's lease, Plaintiff began residing at the Glen at Shawmont Station in July 2021. *See* ECF No. 18-3 at 90.

consistent with Defendant Hazlet's account. The first, dated April 27, 2018, is an article by CBRE, Inc., advertising the sale of the apartment building. *See* ECF No. 13-3 at 65. That aligns precisely with Mr. Datesman's explanation that CBRE, Inc. assisted with the sale of the Glen at Shawmont Station in 2018. *See* ECF No. 1-5 at 3. The second, dated November 1, 2018, is an article by Aion Management, LLC, stating that Aion had entered into a management agreement for the apartment building. ECF No. 13-3 at 82–83. However, this in no way conflicts with Mr. Datesman's notarized statement that Aion's management contract terminated in 2020, *see* ECF No. 1-5 at 3—nearly four years before Plaintiff fell in her apartment unit, ECF No. 1-4 at 7. Plaintiff also cites an undated excerpt of a "loopnet.com" listing by CBRE advertising the sale of the Glen at Shawmont Station. ECF No. 13-3 at 86–87. However, as Defendant Hazlet points out, the full un-excerpted version of this document states that the Glen at Shawmont Station is "no longer [being] advertised" and includes the building on a December 2020 list of "recent transactions" by CBRE. ECF No. 18-3 at 80–88. Unlike cases in which plaintiffs presented conflicting evidence, nothing Plaintiff points to here conflicts with Defendant Hazlet's account that in the years leading up to Plaintiff falling in her apartment, Aion Management and CBRE have had no relationship whatsoever to her apartment building.

This is therefore a case where Plaintiff appears to have "misstated . . . discrete facts," *see Smallwood*, 385 F.3d at 573, by asserting that Aion Management and CBRE "owned and/or managed" her apartment building in the lead-up to her fall in February 2024, *see* ECF No. 1-4 at 5–6. Similar to a doctor who "did not treat the plaintiff" or a pharmacist who "did not fill [the plaintiff's] prescription," whether CBRE and Aion Management owned and managed her apartment building and were therefore responsible for the apartment unit's flooring in the lead-up to February 2024 "easily can be disproved if not true" under the circumstances of this case. *See*

7

*Smallwood*, 385 F.3d at 574 n.12; *see also Smoot*, 378 F.2d at 881–82 (where evidence showed railroad employee left employment before defective system was installed, the employee had been fraudulently joined).[5]

This Court recognizes that it is an exceedingly rare set of cases in which evidence outside the pleadings will show that a plaintiff's claims against a non-diverse defendant are not colorable. Ordinarily, plaintiffs are afforded the benefit of the motion-to-dismiss stage and, upon surviving a motion to dismiss, the ability to develop the record. However, were this Court to find that Plaintiff's claims against CBRE and Aion Management were colorable—parties who have undisputedly had no relationship at all to Plaintiff's apartment building for six and four years respectively before Plaintiff fell—it would encourage parties to name non-diverse defendants to keep cases in state court, string parties along who patently have no relationship to the facts of the case, and encumber both the judiciary's and litigants' resources.

Plaintiff lacks colorable claims against Defendants Aion Management and CBRE. And because Plaintiff lacks colorable claims against Defendants Aion Management and CBRE, this Court need not reach the second method by which a defendant may establish fraudulent joinder—a lack of intent to prosecute the action against the non-diverse defendants. *See Avenatti*, 41 F.4th at 133.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion to Remand (ECF No. 13) will be **DENIED**. An appropriate Order will follow.

---

[5] In *Boyer*, the Third Circuit cautioned that where defenses are "asserted against or by diverse and non-diverse defendants alike, the court may not find that the non-diverse parties were fraudulently joined based on its view of the merits of those claims or defenses." 913 F.2d at 113. That concern does not apply here because the issue of whether there was any connection between Aion Management and CBRE and the apartment building during the relevant time period does not apply to Defendant Hazlet.

8

**BY THE COURT:**

**/s/ Chad F. Kenney**

**CHAD F. KENNEY, JUDGE**